### Century Trust & Savings Bank, Appellant, v. Johanna Adams, Appellee.

### Gen. No. 24,525.

1. BILLS AND NOTES, § 440*—*when defense that guarantor was discharged by coguarantor's assignment for benefit of creditors not sustained.* In an action by a bank as payee of a note against one of the guarantors on the note, the defense that defendant was discharged because the bank became a party to an assignment for the benefit of its creditors by a company which was also a guarantor on the note, and agreed to accept the dividend to be paid thereunder in full settlement of its claim against such company, was not sustained, where the evidence disclosed that plaintiff had refused to sign the assignment agreement and had refused to agree that the receipt by plaintiff of dividends should operate as a release of its claim against such other guarantor.

2. BILLS AND NOTES, § 420*—*what testimony admissible on question of guarantor's discharge by coguarantor's assignment for benefit of creditors.* In an action by a bank as payee of a note against one of the guarantors on the note, the defense that defendant was discharged because the bank became a party to an assignment for the benefit of its creditors by a company which was also a guarantor on the note, and agreed to accept the dividend to be paid thereunder in full settlement of its claim against such company, where the evidence disclosed that although the bank refused to sign the assignment agreement it had received a check reciting that it was in full

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of its claim against such company, it was error to exclude testimony to the effect that the cashier of the bank had stated that it would take the check for dividends on account only, and would not receive it in full satisfaction and discharge of the indebtedness of such guarantor, and that the bank had also refused a check containing a clause releasing all the guarantors on the note.

3. EVIDENCE, § 327*—*when oral testimony admissible to show that acceptance of check did not discharge guarantor on note.* Testimony in an action by a bank against the guarantor on a note, to the effect that a dividend check received by plaintiff from the trustees of the estate of an insolvent coguarantor, reciting that it was in full of plaintiff's claim against such coguarantor, was accepted on account only, was not in violation of the rule prohibiting the admission of oral testimony to vary an instrument in writing, as such check was not that of the bank but of such trustee.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed October 15, 1919.

HARRIS, KAGY & VANIER, for appellant.

GROSSMAN & GROSSMAN, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiff bank brought this suit as payee of a promissory note for the sum of $1,900, against the defendant who was one of the guarantors on the note. The trial was had before the court without a jury and the court found the issues for the defendant, holding that the plaintiff had released one of the other guarantors and this operated to release the defendant also. Judgment for costs was entered against the plaintiff, from which it prosecutes this appeal.

The note in question was the note of one John F. Adams, and the three guarantors on the note were the defendant Johanna Adams, Robinson Cheese Company and C. S. Robinson. The payee bank held two

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

notes of the Robinson Cheese Company, as maker, each secured, in part, by a quantity of cheese. The cheese company made an assignment for the benefit of its creditors. The important question of fact involved in this case is whether the plaintiff bank, at any time, became a party to this assignment or agreed to accept the dividend to be paid thereunder, in full satisfaction of its claim against the cheese company, or whether it actually did so accept such dividend.

The collateral held by the bank on the two notes of the cheese company was sold and the proceeds credited on those notes. The claim of the bank against the cheese company then consisted of those items, namely, the balance due on each of the two collateral notes just referred to, and the liability of the cheese company as one of the guarantors on the Adams note. Although there was no dispute between the parties about the amounts due under the various items, it appears from the record that there was a question whether the trustees under the assignment would recognize all of them, and the bank began a suit in attachment and tied up the funds of the cheese company.

It is claimed by the defendant in the suit at bar, both that the bank became a party to the assignment and agreed to accept the dividend to be paid, in full settlement of its claim, and also that it did so accept such dividend. The bank contends to the contrary. The contention of the defendant that the bank did become a party to the assignment and agree to accept the dividend to be paid thereunder in full settlement of its claim is based on the following facts: The assignment made by the cheese company under date of February 13, 1917, provided that the assignee trustees should be allowed a reasonable fee, should pay necessary expenses and distribute the balance pro rata among the creditors, ''who, in consideration of the

dividends paid to the respective creditors, agree to release the said Robinson Cheese Company,'' and all the partners thereof, from further liability, as shows by a list attached thereto. A copy of this assignment was sent to each creditor including the plaintiff bank. The bank did not sign the instrument of assignment or expressly assent thereto as requested but on the contrary declined to do so. Under date of April 4, 1917, the trustees wrote the plaintiff bank that they were in a position to declare a first dividend, ''but are unable to do so because of your failure to consent to the assignment. We therefore request that you mail to us upon receipt of this letter, at the above address, your consent accompanied by a statement of your account showing the amount due you and thereby facilitate the distribution of the funds   *   *   *.'' So far as the record shows, there was no direct reply to that letter, but under date of April 20, 1917, the bank wrote the trustees saying that they had signed a stipulation to dismiss the attachment suit, above referred to, ''with the understanding that you, as trustee, would recognize our claim on account of certain notes which we hold, and would, upon distribution of the funds belonging to the trust estate, pay to us our distributive share   *   *   *.'' This letter then referred to the three notes and continued to the effect that it was the bank's understanding that in computing their distributive share, the trustees would take into account, in addition to the amount due on the Adams note, any deficiency that might remain owing on the collateral notes after the collateral might be sold and the amount thus realized credited on those notes. The letter requested the trustees to confirm the bank's understanding as thus outlined. On the following day, April 21, 1917, the trustees wrote the bank in confirmation of their letter of the 20th, saying they had ''credited your account,'' with

the claim of $1,900 (being the Adams note) and were waiting for the sale of the collateral on the other two notes, when they would "credit your account" with the deficiency or balance remaining due on those notes, "and upon distribution you will share pro rata with the balance of the creditors." Under date of October 13, 1917, the president of the plaintiff bank notified the trustees that they had realized $2,212.25 from the sale of the collateral and he certified that the balance due the bank on the three items making up their claim, after crediting the amount realized from the sale of the collateral, on the two notes to which the collateral applied, was $6,584.65.

On these facts we are of the opinion that the bank never became a party to the assignment or agreed to accept the dividend to be paid by the trustees in full settlement of their claim against the cheese company. The bank refused to sign the assignment agreement. When the trustees wrote the bank on April 4, asking that the bank forward its "consent accompanied by a statement of your account," the bank did not do so. The next correspondence of April 20 and 21 shows that the bank and the trustees had adjusted their differences which had caused the attachment suit and that the bank had stipulated to dismiss that suit with the understanding, not that the bank would become a party to the assignment or accept less than the full amount of their claim in discharge of it, but that the trustees would pay the bank a dividend, not only on the Adams note but also on the balance remaining due on the collateral notes after crediting the proceeds of the collateral. There is no stipulation in any of the correspondence or documents referred to, whereby the bank agreed that the receipt of dividends by it should operate as a release of the cheese company.

The next question is, did the bank, in fact, accept a dividend in full payment of its claim, so as to release the cheese company from any further liability?

The evidence shows that they received a dividend check through the mails from the trustees for the sum of $1,284, reading, ''in full payment of your claims against the Robinson Cheese Company'' and this check was retained by the cheese company and cashed. It was shown that when the bank received that check, one of the trustees, the cashier of the bank and its counsel were present. The cashier of the bank, when on the stand as a witness, was asked what was said at that time between the parties, as to the transaction, as to the indebtedness of the cheese company and the claim of the bank, if anything. Objection to this question, interposed by the defendant, was sustained. The plaintiff then offered to show that the representative of the bank there made the statement that the amount of the claim was undisputed and that they would take the check and apply it on account only and would not receive it in full satisfaction and discharge of the indebtedness of the cheese company. The witness was then asked if there was another check offered by the trustees to the bank before they offered the check which the bank cashed. Objection was also made to this question by the defendant and objection sustained. The plaintiff then offered to show that there was another check tendered prior to the tender of the one here involved, and that it had a clause in it releasing the defendant, Johanna Adams, the Robinson Cheese Company, and the estate of John Adams, the maker of the $1,900 note. It was error to sustain the objections to these questions. To have admitted the evidence would not be permitting the bank to introduce oral evidence which would vary the construction of a written instrument or indorsement, as the defendant contends. It must be remembered that the instrument was not that of the bank but of the trustees. If the bank had accepted a plain dividend check, and surrendered the note it held and given the trustees a release, and the oral evidence sought to

be introduced was for the purpose of varying the terms of that release, the defendant's contention might be sound, and *Clark v. Mallory,* 185 Ill. 233, and the other cases cited by the defendant would be in point. But that is not at all the situation here. The admission of oral evidence to vary and explain an indorsement on a check similar to the one involved here was upheld in *Reid, Murdoch & Co. v. Taylor,* 212 Ill. App. 659.

The plaintiff bank had never joined the composition or agreed to accept a dividend in full payment of its claim and was therefore in the same position in taking and cashing this check as it would have been in if the debtor was not endeavoring to make a settlement with all its creditors. In that situation the retention of the check and the cashing of it did not necessarily operate to discharge the cheese company. *Siegel v. Cohen,* 210 Ill. App. 338; *Teague v. John E. Burns Lumber Co.,* 187 Ill. App. 225. Although the correspondence which had taken place contained no stipulation by the bank that it would release the cheese company upon receipt of a pro rata dividend, nor could operate to bind the bank to that effect, it might be that if the bank had accepted the check in question without comment and cashed it, such action on its part could be said to give its previous correspondence such a construction as to show that in filing its claim it intended to accept its dividend in full. But if the evidence sought to be introduced by the plaintiff and rejected by the court were admitted, it would have tended to establish the opposite construction as contended by the plaintiff.

For the reasons we have given it was error to sustain the objections of the defendant to the offer of that evidence, and therefore the judgment of the Circuit Court is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*